JOSEPH BAGEARD, DEFENDANT IN ERROR, v. THE
CONSOLIDATED TRACTION COMPANY, PLAINTIFF
IN ERROR.

Submitted December 11, 1899—Decided March 5, 1900.

1. A passenger on a street car who, as he testified, was sick, but whom
the carrier's servants supposed to be under the influence of liquor,
was helped from the car at the terminus of the route, and by the con-
ductor of the car was led to the front of the station, at or near to the
public street, and left at a place where his way was open in the direc-
tion in which he wished to go, the conductor then leaving on his out-
ward trip. He turned and went toward the back of the station, and
twenty minutes later slipped down between the front and rear wheels
of a car moving on a track that lay between where he was then stand-
ing and the place where he was left. In a suit against the railway
to recover damages for the resulting injury—*Held*, that no cause of
action was established.

2. On the trial of an issue of fact where the *bona fides* of a claim is chal-
lenged, it is competent to prove that on a former trial of the same
issue, in which the party whose claim is challenged testified to an
entirely different state of facts, he produced, also, a witness to corrobo-
rate his statement. The evidence is not to be received as affirmative
proof of what was deposed but as discrediting such party.

3. When one, by reason of his own voluntary intoxication, exposes him-
self to danger and receives injuries which he could, and by the exer-
cise of ordinary prudence would, have avoided if sober, he is guilty
of contributory negligence and cannot recover for such injuries.

On error to the Supreme Court.

The plaintiff, in the first count of his declaration, com-
plained that the defendant, a common carrier of passengers
upon an electric street railway, did not use due care to assist
him to get safely off a car on which he was a passenger, at
the terminal station at the foot of Exchange Place, in Jersey
City, near the Pennsylvania railroad ferry to New York, and
to pass through such station to the street, and so negligently
managed another car as to run him down while he was care-
fully proceeding through the station in departing from the

car on which he had arrived. In the second count he complained that on his journey in defendant's car he became seriously ill and faint, and it thereby became the duty of the defendant to use the highest practicable degree of care for his safety and safe delivery beyond the tracks of the defendant, in its said station, and averred, as breach, that the defendant so negligently managed another car propelled along one of the tracks of the station, and so negligently placed and left the plaintiff in his condition of illness and faintness, in the station and among the tracks of the defendant, that while he was endeavoring to proceed from the station he was run down by such other car. Under plea of the general issue the cause came on for trial at the Union Circuit and resulted in a verdict for the plaintiff. This writ of error removes the consequent judgment, and reversal is sought upon exceptions sealed at the trial.

For the plaintiff in error, *James B. Vredenburgh.*

For the defendant in error, *George H. Bruce.*

The opinion of the court was delivered by

COLLINS, J.   Exceptions to the refusal of the trial judge to nonsuit the plaintiff or direct a verdict for the defendant involve an examination of the evidence in the cause.

The plaintiff was injured on June 12th, 1897, in the terminal station of the defendant's electric street railway at the foot of Exchange Place, in Jersey City, near the ferry to New York. This terminal station was thus arranged and used: inbound cars ran east down York street on a single track and then into the station on four tracks diverging therefrom and curving to the north. In the station the four tracks were parallel with each other and ran northward to the south line of Exchange Place. Thence they converged, crossing the sidewalk and curving to the west until they merged in a single outwardbound track in that street. The cars came to a

stop a little south of the line of Exchange Place, and thence started forward on their outward trips. These terminal tracks were covered by a shed, open front and rear and supported at the sides by posts ten inches square. The company's offices adjoined this shed on the east, and Taylor's hotel adjoined it on the west. The space between Taylor's hotel and the westernmost track .in the station was four feet and eight inches wide. Between the line of the posts and the line of a car on the track the distance was not more than two and a half feet. Passengers had no proper occasion to go within this space, the car exit and entrance being on the other side, but men sometimes did so for a purpose which, there, would be a nuisance. Farther down the station there was an offset in the wall and a door of entrance to the hotel. The plaintiff was a passenger on a car that ran into the station on the westernmost track at twenty-five minutes after eleven o'clock at night. His destination was the ferry to New York. He was asleep in the car, and after the other passengers had gone he was awakened by the conductor and motorman. He testified that he was sick; they testified that they supposed that he was under the influence of liquor. There was no proof that anything was said by or to him. He was helped to the ground on the east side of the car and led out to the front of the station. He called as witnesses the conductor and motorman who at the time of the trial were not in defendant's employ. The conductor testified that he led the plaintiff to the edge of the sidewalk, beyond the company's premises. The motorman testified that he saw the conductor leading the plaintiff along by the side of the car towards the street, but did not see how far he went. The plaintiff testified that he was taken beyond the car, but not to the street. How near to the sidewalk he was brought he could not say. He further testified that he knew nothing of what happened from the time he was left until he was injured except that he was trying to get out of the station. The conductor admitted that on the trial of a suit brought for the same injury, in which there was a nonsuit, he had testified that he left the plaintiff five

or six feet short of the sidewalk, but he said that his memory had been refreshed and his present statement was correct. The plaintiff did not repudiate the conductor as a witness, as he possibly might have done on the ground of surprise, and, in view of his own uncertainty, it must be considered as proved that he was taken beyond the defendant's premises. It makes little difference, however, whether he was taken to the street or to within a few feet of it.   At either point he was perfectly safe and his course to the ferry was open.   He was able to walk and there was no proof that anything in his condition indicated that it was improper or unsafe to leave him at the front of the station whatever may have been the exact spot where he was left.

The conductor testified that as his car left the station on its outward trip the plaintiff turned and went towards the back of the station.   He was next seen, as far as the testimony shows, by a witness called in his behalf and by two called for the defendant, and was then standing between the hotel and a car on the westernmost track that was awaiting the starter's signal.   Its schedule time to arrive was twenty minutes before twelve o'clock at night, and to leave was fifteen minutes before twelve o'clock at night.   He was leaning against the hotel or one of the posts of the shed, and had been vomiting.   His witness was the motorman of a car that had just come in behind the other and upon the same track. The car ahead started and as it did so the plaintiff slid down to the ground, and his feet went under the rear wheels and were crushed.   No negligence is attributable to those in charge of that car, for they had no reason to look for anyone in the place where plaintiff stood, and none to the motorman of the car behind, for he was under no duty to give warning.   Nor was there any apparent danger to the plaintiff.   He was safe as long as he stood still, and his fall was not due to the car's starting, but to his own sick or drunken state.

The first count of the declaration, of course, had no support, and the case under the second count was rested solely on the failure to take the plaintiff "beyond the tracks" in

the company's station.   If the plaintiff was able to walk and merely under the influence of liquor, he could ask no greater care than that due to sober passengers.   If the proof warranted notice to the car conductor that the plaintiff was sick, although not helpless, then such extra care was demanded as the circumstances seemed to require.   That would have been a jury question, but to justify submission of recovery for the plaintiff's injury, it must have appeared that the injury was proximately caused by neglect to exercise such care.   For example, had the plaintiff been injured, as in fact he claimed upon a former trial, in attempting immediately to cross the tracks that lay between where he was left and the ferry which was his destination, a jury might well have found that sufficient care towards a sick man had not been exercised and this although he may have been taken to the sidewalk, for even then he would have had to cross the tracks.   But the proof showed that the plaintiff turned and re-entered the station, and that he was hurt some twenty minutes later on a track that did not lie within his course.   Plainly there was no causal connection between the alleged negligent omission and the accident to the plaintiff.   There should have been nonsuit or a direction of verdict for the defendant.

As the case may be retried, attention should be called to two incidental errors in the rulings at the trial.   One was with respect to the evidence on the trial of the former action. At that trial the plaintiff testified to an entirely different condition of affairs from that developed at the trial now under review.   This was his testimony : " I alighted from the car after it stopped ; I alighted and walked towards the ferry, and as I was walking up the hill and turned to go to the ferry, a car struck my right leg, threw me to the ground and ran over my foot."   That he so testified, the defendant was permitted to prove, but an offer to prove that at the former trial he produced a witness to corroborate his story, was overruled against defendant's exception, on the ground that the evidence would be hearsay.   Such exclusion was erroneous. The evidence was competent on a challenge of the *bona fides*

of the plaintiff's claim. It could not be received as proof of what was deposed, but it might properly discredit the plaintiff. Of course, a party is not bound in one trial by the testimony of a witness produced by him upon a previous trial of the same issue. He may have been disappointed in such testimony. It may have been false or mistaken testimony. But where the point sought to be established is that the plaintiff had previously put forth a different claim, it is permissible to prove not only that he himself asserted it in testimony, but also that he procured others to support him. Affidavits or statements of third persons used by a party are evidence against him in a subsequent controversy. They stand on the ground of admissions. *Brickell* v. *Hulse,* 7 *Ad. & E.* 454; *Gardner* v. *Moult,* 10 *Id.* 464; *Richards* v. *Morgan,* 4 *Best & S.* 641. There is, of course, a difference between such cases and that now in hand, but to the extent indicated there is like reason for the legality of the excluded evidence.

The other error was in the inadequate treatment in the charge of the subject of the plaintiff's alleged intoxication as constituting contributory negligence. The defendant requested the trial judge to instruct the jury that if the intoxication of the plaintiff contributed to the injury as a proximate cause thereof, he could not recover; and again, that if the jury should believe, from the testimony, that at the time of the accident the plaintiff was in a state of intoxication and that such state of intoxication placed him in such a condition that he was unable and failed to exercise that care and caution required of a sober man, and that by reason of such condition he was injured, then, and in such event, he could not recover. To these requests the sole response in the charge was this: "Therefore I say to you that the company, in taking charge of that man, if he was in a condition that he could not take care of himself, owed him a duty to take him out to the street or out of a place of danger. Now, did they do that? If they did, then, if he, on account of being in an intoxicated condition or for any

other reason, afterwards went back upon the premises of the company and was injured, the company is not liable unless they injured him intentionally." This ruling in effect deprived the company of the defence of contributory negligence arising from intoxication. It was entitled to that defence, if lawful, whether the plaintiff was taken from or left upon its premises. If a drunken man is accepted as a passenger, the carrier should not leave him in a place of danger, but I know of no rule that requires the carrier to follow up the drunken man if left in a place of safety, though on the carrier's premises, and see that in his wanderings he does not get in danger. The question, however, is entirely apart from defendant's negligence. A well and sober man in the position of the plaintiff when he slid down beneath the car wheels could, with proper care, have avoided such an accident; in fact, he would have been not at all in danger. No matter how the plaintiff came to be in that position, if his sliding down was wholly or partly due to drunkenness and the rule contended for be law, there could be no recovery. That such is the legal rule is well established. In all that I have said upon this subject it must be understood that the drunkenness, to constitute a defence, must have been voluntary on the plaintiff's part, and this, I understand, was assumed in the requests to charge. There was proof, sufficient to go to the jury, of such drunkenness and the requests were pertinent. Drunkenness alone, though voluntary, is not negligence. A drunken man *may* be careful. The true rule is that voluntary drunkenness does not relieve the drunken man from the degree of care required of a sober man in the same circumstances, and if his drunkenness renders him incapable of exercising such care, then it contributes to any injury thereby sustained and bars recovery for another's negligence. The text-writers who treat of contributory negligence all assert this doctrine. A great array of references will be found in the recent case of *Smith* v. *Railroad*, 114 *N. C.* 728, where the doctrine is declared and elaborately defended. The adjudged cases are collated in 7 *Am. & Eng. Encycl. L.* (2d ed.) 491. The best statement

of the doctrine I have found is that of Mr. Justice McBride in *Woods* v. *Board of Commissioners of Tipton County*, 128 *Ind.* 289, 291, as follows: "Where one, by reason of his own voluntary intoxication, exposes himself to danger and receives injuries which he could, and by the exercise of ordinary prudence would, have avoided if sober, he is guilty of contributory negligence and cannot recover for such injuries." Another apposite judicial utterance is found in *Illinois Central Railroad Co.* v. *Cragin*, 71 *Ill.* 177, 181, where it is said that "a person who voluntarily uses intoxicating drinks until he has become physically helpless or his powers so far impaired that he is unable to exert the necessary effort to avoid danger, is guilty of negligence when he places himself in a position of danger, and so when he thus stupefies and deadens his intellectual powers so that he is unable to foresee and guard against danger." These words seem strikingly appropriate to the plaintiff's plight just previous to his injury if due to drink and not to sickness.

The judgment must be reversed and a *venire de novo* awarded.

*For affirmance*—LUDLOW. 1.

*For reversal*—THE CHIEF JUSTICE, DEPUE, DIXON, GARRISON, LIPPINCOTT, GUMMERE, COLLINS, BOGERT, NIXON, HENDRICKSON, ADAMS, VREDENBURGH. 12.