SIDNEY SOUZA *vs.* UNITED ELECTRIC RAILWAYS CO.

DECEMBER 5, 1930.

PRESENT: Stearns, C. J., Rathbun, Sweeney, and Murdock, JJ.

RATHBUN, J. This is an action of trespass on the case for negligence to recover for personal injuries caused by a collision between a street car of the defendant and a coal team while being driven by the plaintiff. The trial in the Superior Court resulted in a verdict for the plaintiff for $15,000, and the case is before us on the defendant's exceptions as follows: To the admission and exclusion of evidence; to instructions to the jury; to the refusal to instruct as requested and to the denial of the defendant's motion for a new trial.

The collision occurred at the corner of Warren avenue and Abby street, in East Providence, after dark in the evening of October 29, 1924. Warren avenue is a wide highway, running east and west, with trolley tracks at the extreme edge of each side. Abby street at the time of the accident was a rough ungraded street, running at right angles with and to the north from Warren avenue, and served as a means of ingress and egress for one or two houses. The easterly side of Abby street is 1,000 feet west from Moore's Corners where Pawtucket avenue crosses Warren avenue at approximately right angles. The plaintiff after delivering a load of coal on Abby street, intended to cross

the northerly line of trolley tracks and proceed west on Warren avenue. While attempting to cross said tracks the plaintiff and his helper were seated on the seat of the coal wagon which closely resembled an ordinary farm wagon. The team, while crossing the track, was struck on the left side by a street car which was coming from the east. When the car stopped the plaintiff and a part of each horse were under the front end of the car; the body of the wagon was upon the bank at the north side of the car tracks and was close to the right side of the car.

The plaintiff contends that he stopped the horses when they were 15 or 20 feet north of the railway track and looked to his left towards Moore's Corners; that, seeing no car, he started the horses and looked again to his left when the horses reached the first rail and saw no car; that the off horse stumbled on the second rail and fell to his knees; that plaintiff pulled on the reins, the horse regained his feet and the team proceeded until all of the wagon wheels except the right rear wheel had passed over the second rail when the left rear corner of the wagon was struck by the electric car. Apparently neither the plaintiff nor his helper saw the car until the collision which sounded to them like an explosion.

The defendant contends that the car, after turning at Moore's Corners at approximately a right angle from Pawtucket avenue onto Warren avenue, proceeded west a short distance and stopped to take on a passenger at a white pole 800 feet east of the east side of Abby street; that the car proceeded at about 20 or 25 miles per hour until the car was within 60 or 70 feet of Abby street when the motorman saw the horses coming on a trot close to, and about to go upon, the track; that the motorman stopped the car as quickly as possible and that the car hit the wagon at the left front wheel.

As bearing upon the question of negligence and contributory negligence, the parties made considerable of an

issue of the question whether the wagon was struck at the left front corner or left rear corner.

Defendant's exceptions 2, 3, 4 and 5 were taken to rulings admitting in evidence photographs taken of the remnants of the wrecked wagon nearly three years after the accident. The photographs of the broken parts were taken in a yard where they had been stored since the time of the accident. We think the ruling was erroneous. It does not appear that said remnants were in the same condition as they were immediately after the collision. Furthermore, the photographs could furnish no aid to the jury in determining any issue in the case and should for this reason also have been excluded. See 22 C. J. 914. Exceptions 2, 3, 4 and 5 are sustained. Defendant's 10th, 11th, 12th, 13th and 14th exceptions were taken to rulings permitting Professor William H. Kennerson to testify as an expert that in his opinion the wagon was struck on the left rear corner. The witness was asked the following question: "Professor Kennerson, from your observation of the locality of the accident, with your knowledge of what that condition was in 1924, and from your examination of the wagon body at the coal yard, can you state, have you drawn a conclusion as to what the point of contact with the wagon was?" The answer was: "I have made such an assumption and the answer would be exactly what I gave to the preceding question. Namely, that in my opinion the wagon was struck on the left rear portion, including the wheel and wagon body practically similarly."

The ruling admitting the answer was erroneous. No hypothetical state of facts upon which an opinion might be based was included in the question. The jury should be given the facts upon which an opinion is based not only that they may determine whether such a state of facts exists, but also to enable them to judge the reasonableness of the opinion. An expert opinion cannot be based upon facts not before the jury. Rogers Expert Testimony, 2nd ed., p. 82; Lawson Expert and Opinion Ev., 2nd ed., p. 266;

*Howarth* v. *Adams Express Co.*, 269 Penn. 280, 112 A. 536. Furthermore, it does not appear that such a state of facts existed as required the exercise of scientific knowledge in drawing a conclusion as to what part of the wagon was first struck by the car. The wagon was almost completely wrecked; at least three of the wheels were demolished and the crushed and broken body was thrown from the track to the side of the road. It is admitted that the dirt between the ties was somewhat washed away, leaving an uneven surface between the car rails. A jury could determine as well as an expert the point of contact. As this court said in *Ennis* v. *Little & Co.*, 25 R. I. 342; "the knowledge called for is not expert knowledge, but an inference of fact which the jury could make as well." "The opinion of so-called experts is not received 'if all the facts can be ascertained and made intelligible to the jury, or if it is such as men in general are capable of comprehending and understanding'." *National Biscuit Co.* v. *Nolan*, 138 Fed. 6, and authorities cited. The rule is stated in Rogers Expert Testimony, 2nd ed., p. 23, as follows: "If the relation of facts and their probable results can be determined without especial skill or study, the facts themselves must be given in evidence, and the conclusions or inferences must be drawn by the jury." Exceptions 10, 11, 12, 13 and 14 are sustained.

Exceptions 16, 17, and 19 were taken to instructions relative to the doctrine of the last clear chance. The trial justice in the course of his charge instructed the jury four times substantially as follows: "Now, the second phase you may take up. If you find that the plaintiff was negligent, that he carelessly and negligently placed himself in a place of danger, and the motorman of this car could have seen him, and should have seen that the plaintiff was placing himself in a place of danger, then the motorman should do everything he possibly could to stop this car."

The rule was stated by us in *Smith* v. *Hopkins*, 131 A. 542, applied and quoted in *Nahabedian* v. *U. E. R. Co.*, 50 R. I. 455, 149 A. 19, as follows: "This statement of the

standard of care required of the defendant 'to have avoided striking him (plaintiff) by using all means in his power' is erroneous, as defendant's duty was to use the reasonable care of a prudent man in like circumstances to avoid striking plaintiff after his peril was or should have been discovered." It is a fact that said justice once stated the rule correctly, so far as the point here involved was concerned, but taking the charge as a whole upon this point the instructions were inconsistent and misleading. Counsel for the plaintiff, at the hearing before us, stated that the doctrine of the last clear chance is not applicable to this case, and we are of the same opinion. There was no attempt to fix the position of the car when the horse stumbled upon the car track. The 16th, 17th and 19th exceptions are sustained.

The 18th exception was taken to instructions to the jury. Defendant requested the court to charge, relative to contributory negligence, as follows: "It was the duty of the plaintiff to look for approaching cars immediately before attempting to cross the car track, and to look carefully, and to see the approaching car, if the electric car was in a position to be seen by him, and to have his team under control so that the team could be stopped if the car was so close and running at such a speed as to make it dangerous for him to attempt to cross the track, and if the jury find that the plaintiff failed to use the above precautions, or any one of them, and attempted to cross the track when the car was within his view, and so close to the place of the accident and running at such a rate of speed that the motorman could not, in the exercise of reasonable care, stop the car and prevent the accident the plaintiff is guilty of contributory negligence and cannot recover." The court read the request and concluded with the following statement: "Well, I so charge you. I still say that I think I have covered that, and I think I covered the first request also. I think you will all agree with me. Did the man drive onto the track under all the circumstances, with the car coming, if it was, and if he saw it, or could have seen it if he had been looking,

did he do what an ordinary prudent man would have done under all the circumstances, under similar circumstances? That is the rule."

By the concluding statement the jury were told that it was contributory negligence, as a matter of law, for a plaintiff to fail to look for an approaching car before attempting to cross the track, but the concluding statement continued with language from which the jury might naturally infer that it was a question of fact, for them to decide, whether it was contributory negligence for the plaintiff to drive upon the car track before looking for an approaching car. The attempt to either modify or explain the request, which had been already granted, left the subject in a state of confusion. The 18th exception is sustained.

The 15th exception was taken to a ruling refusing to permit counsel for the defendant to read to the jury testimony which tended to impeach defendant's own witness. At a former trial of the case said witness was called by the plaintiff. At said trial the witness testified on cross-examination that he found on examination that the left front wheel of the wagon in question was broken. At the trial now under consideration said witness was not called by the plaintiff but was called by the defendant. The witness denied that he testified at the former trial that said left front wheel was broken. Defendant then offered the record of the witness's testimony given upon this point at the former trial. The offer was refused and the defendant excepted.

The ruling was correct. The witness was not one which the defendant was obliged to call, like a subscribing witness to a will. It cannot be contended that the witness's statements had the force of admissions made by the plaintiff. See *Becker* v. *City of Philadelphia*, 66 A. 564; *Bageard* v. *Consolidated Traction Co.*, 45 A. 620. The inconsistent testimony at the former trial was given on cross-examination.

Defendant was permitted for the purpose of refreshing the witness's recollection to read to him his former testi-

mony. Such procedure was in accord with the long established rule in this State. See *Hildreth* v. *Aldrich*, 15 R. I. 163. In some jurisdictions statutes have been adopted permitting a party to show that his own witness had, under oath or otherwise, previously made statements inconsistent with his testimony. In a few other jurisdictions, where the subject is not regulated by statute, it is held that such proof is admissible. The subject in all of its phases is thoroughly treated in 2 Wigmore on Evidence, Chap. 29. The rule in this State, which appears to be supported by the weight of authority, is that if a party is surprised by the testimony of his witness inconsistent statements or testimony may be called to the witness's attention, and if the witness refuses to admit making such statements or giving such testimony proof of such statements or testimony will not in the ordinary case be received. In *Barker* v. *R. I. Co.*, 35 R. I. 406, the trial court refused to permit counsel who was surprised by his witness's answer, to read to the witness the inconsistent testimony given by the witness at a former trial. This court in refusing to disturb the verdict, notwithstanding such ruling, said: "The extent, however, to which a court shall go in permitting a relaxation of the ordinary rule in regard to the cross-examination of counsel's own witness is a matter entirely within the sound judicial discretion of the justice presiding. Unless there has been an abuse of this discretion the refusal of the trial court to permit such question to be asked is not a ground for exception." Without stopping to analyze the facts in the *Barker* case we will say that we are of the opinion that a trial court, ordinarily should grant some latitude to counsel who is surprised by his witness's answer, especially when counsel has the transcript of the witness's testimony at a former trial. In the case before us the ordinary rule that a party cannot impeach his own witness applies. See *Hildreth* v. *Aldrich*, 15 R. I. 163. The 15th exception is overruled.

Exceptions 20, 21 and 22 were taken to the denial of the defendant's motion for a new trial. It is urged that the

damages are excessive and that the verdict on the question of liability is against the weight of the evidence. It is called to our attention that the plaintiff, if he had looked, as he testified he did, immediately before driving upon the track could have seen any car which was approaching even at a distance of 1,000 feet away.

When a new trial must be granted on other grounds we do not consider the question whether the verdict which we are setting aside is against the weight of the evidence.

The exceptions not specifically discussed have been considered and are overruled.

The papers in the case are ordered remitted to the Superior Court for a new trial.

*Francis E. Sullivan,* for plaintiff.
*Clifford Whipple, Earl A. Sweeney,* for defendant.