Sidney Souza *vs.* United Electric Railways Co.

JUNE 29, 1932.

Present: Stearns, C. J., Rathbun, Sweeney, Murdock, and Hahn, JJ.

RATHBUN, J. This is an action of trespass on the case for negligence to recover for personal injuries caused by a collision between a street car of the defendant and a coal team driven by the plaintiff. The trial in the Superior Court resulted in a verdict for the plaintiff for $17,500 and the case is before us on the defendant's exceptions as follows: To the refusal to instruct the jury as requested; to the refusal to direct a verdict for the defendant and to the denial of defendant's motion for a new trial.

The collision occurred at the corner of Warren avenue and Abby street, in East Providence, after dark in the evening of October 29, 1924. Warren avenue is a wide highway running east and west with trolley tracks at the extreme edge of each side. Abby street at the time of the accident was a rough ungraded street, running at right angles with and to the north from Warren avenue, and served as a means of ingress and egress for one or two houses. The easterly side of Abby street is 1,000 feet west of Moore's Corners, where Pawtucket avenue crosses Warren avenue at approximately right angles. The plaintiff, after delivering a load of coal on Abby street, intended to cross the northerly line of trolley tracks and proceed west

on Warren avenue. While attempting to cross said tracks, the plaintiff and his helper were seated on the seat of the coal wagon, which closely resembled an ordinary farm wagon. The team, while crossing the track, was struck on the left side by a street car which was coming from the east. When the car stopped, the plaintiff and a part of each horse were under the front end of the car; the body of the wagon was upon the bank at the north side of the car tracks and was close to the right side of the car.

The plaintiff contends that he stopped the horses when they were 15 or 20 feet north of the railway track and looked to his left towards Moore's Corners; that, seeing no car, he started the horses and looked again to his left, when the horses reached the first rail, and saw no car; that the off horse stumbled on the second rail and fell to his knees; that plaintiff pulled on the reins, the horse regained his feet and the team proceeded until all of the wagon wheels except the right rear wheel had passed over the second rail when the left rear corner of the wagon was struck by the electric car. Apparently neither the plaintiff nor his helper saw the car until the collision, which sounded to them like an explosion.

The defendant contends that the car, after turning at Moore's Corners at approximately a right angle from Pawtucket avenue on to Warren avenue, proceeded west a short distance and stopped to take on a passenger at a white pole which was 800 feet east of the east side of Abby street; that the car proceeded at about 20 or 25 miles per hour until it was within a short distance from Abby street when the motorman saw the horses coming at a trot close to, and about to go upon, the track; that the motorman stopped the car as quickly as possible and that the car hit the team between the horses and the left front end of the wagon.

As bearing upon the question of negligence and contributory negligence, the parties made considerable issue of the question whether the wagon was struck at the left front corner or left rear corner.

The plaintiff contends that he drove the horses diagonally across the track and that at the time of the collision all of the wagon except the right rear wheel and right rear corner, had passed over the track. He does not attempt to rely upon the doctrine of the last clear chance—which was not applicable—but insists that he was entirely free from negligence by reason of the fact that immediately before driving upon the car track he stopped the horses and, as he contends, looked toward Moore's Corners and saw that no car was within sight. To substantiate his theory, he endeavors to show that the team was not struck until both horses and the whole of the wagon, except the right rear wheel and right rear corner, had passed over the track. He appreciates the fact that he would be deemed guilty of negligence if it should appear that the horses were struck almost as soon as they entered upon the track. The case was submitted to the jury on the theory that the plaintiff was guilty of contributory negligence if the street car had passed Moore's Corners when the plaintiff drove upon the track.

To support the plaintiff's contention that the car had not passed said corner and was not within sight when he drove upon the track, there is nothing except the testimony of the plaintiff and his helper that they looked and saw no car. We have repeatedly stated that it avails a party nothing to say that he looked and saw nothing when if he had looked he would have seen that which was plainly visible. *Beerman* v. *Union R. R. Co.,* 24 R. I. 275. Had the plaintiff looked before driving upon the track, he would have had an unobstructed view of said track down to said Corners, 1,000 feet away.

Three other witnesses for the plaintiff testified that while walking on Warren avenue in the direction of, and in close proximity to, Abby street they saw the car only a short distance away from said street but saw no team until the instant of the collision. An electric light was burning at the corner of said street and Warren avenue. It is admitted

that the team carried a lighted lantern and that the headlight on the car, as well as the lights within, was lighted. There was nothing on the street to interfere with the view of said witnesses.

It is not contended that the horse in stumbling fell to the ground or became entangled in the harness. He fell to his front knees and apparently regained his footing promptly.

The fact that neither the plaintiff nor his helper saw the car until after the collision sheds considerable light on the situation. If they looked towards the corner immediately before driving upon the track and then drove slowly upon the track, it is inconceivable that the brightly lighted electric car proceeded toward them without being observed by them for a distance of 1,000 feet while they were upon and in the act of crossing the track.

The testimony of the plaintiff's own witnesses seems to preponderate strongly against him. However, the physical facts clearly demonstrate that the entire team—except the right rear wheel and right rear corner of the wagon—had not passed over the track, as the plaintiff contends, before the collision. Had the team been in such a position, it would have been pushed to the left and the body of the wagon would have been found on Warren avenue south of the north car track instead of on the bank at the right hand side of the car. If the horses were across the track and the wagon entirely across, except the right rear wheel and corner, the collision would not have drawn the horses back on to the track and under the front end of the car.

In *Whalen* v. *Dunbar,* 44 R. I. 136, this court, in sustaining an exception to the refusal to direct a verdict for the defendant said: "When testimony is opposed to established physical facts the testimony must yield to such facts. In *Dodds* v. *Omaha & C. B. St. R. Co.,* 178 N. W. (Neb.) 258, the court said: 'The rule that a verdict will not be disturbed when there is evidence tending to support it does not apply where the verdict is opposed to the undisputed physical facts in the case, or is in flat contradiction of rec-

ognized physical laws, and where the testimony presented, taken as a whole, is capable of no reasonable inference of such a state of facts as would allow the plaintiff to recover'." The same rule is stated in Sec. 2714 (1703) of Elliot on Railroads.

The special findings in accordance with the plaintiff's claim add nothing to the verdict. The presumption that a jury has intelligently and conscientiously performed their duty does not exist when the physical facts clearly demonstrate that the facts as found by the jury were impossible. 29 Cyc. 836; 46 C. J. 192.

A minority of the members of the court are of the opinion that the physical facts conclusively show that the alleged facts, which were solely relied upon by the plaintiff to prove due care on his part, did not exist; that the plaintiff, therefore, has no evidence whatever to prove that he was in the exercise of due care; and that, as the doctrine of the last clear chance was not applicable, a verdict should have been directed for the defendant. However, a majority of the court have agreed that the case should be sent back for a new trial. The exception to the refusal to direct a verdict for the defendant is overruled and the exception to the refusal to grant defendant's motion for a new trial is sustained.

When counsel for the plaintiff concluded his argument to the jury, counsel for the defendant requested instructions as follows: "(1) There is no evidence in this case that the defendant's version of the accident was a 'frame-up' and argument to that effect was improper and should be disregarded. (2) There is no testimony in this case that the defendant has failed to produce witnesses that it could have obtained and any argument to the contrary was improper and should be disregarded."

The request was refused and defendant's exception noted.

We cannot pass upon this exception because, the argument not having been reported, the record as to the remarks complained of is incomplete. If such statements

were made to the jury without warrant, counsel for defendant should have moved that the case be taken from the jury and passed or, if he did not wish to do this, he should have had the offensive remarks placed upon the record before the case came to this court for hearing on the bill of exceptions.

The case is remitted to the Superior Court for a new trial.

HAHN, J., concurring. I concur in granting a new trial as the verdict is clearly against the weight of the evidence. Considering the previous travel of the case, I am of the opinion that it should not be remitted to the Superior Court for the entry of judgment for the defendant.

SWEENEY, J., dissenting. I am obliged to dissent from the foregoing opinion because I am convinced that the trial justice did not err when he denied defendant's motion for a new trial.

This case has been before this court twice: 49 R. I. 430; 51 R. I. 124. In the first opinion we held that plaintiff's evidence was such that a jury might find that the motorman was guilty of negligence and that the trial justice erred in directing a verdict for the defendant. In the second opinion we said: "As bearing upon the question of negligence and contributory negligence, the parties made considerable of an issue of the question whether the wagon was struck at the left front corner or left rear corner." We also said: "The jury could determine as well as an expert the point of contact" between the car and the wagon and held that the court erred in permitting an expert to testify that, in his opinion, the wagon was struck on the left rear portion. 51 R. I. 124, 128.

The issue as to where the car struck the wagon was again presented to the jury at the last trial. The motorman testified that his car struck between the horses and the front of the wagon. Plaintiff and the man riding with him each testified that the wagon was struck from behind. Plaintiff testified that his horses walked towards the track; that

when about 25 feet from it, he stopped and looked to his left and saw no car; that he then started to cross the track; that the off (right-hand) horse stumbled and floundered for about a minute, regained its footing and continued across the track and was parallel with it when the car struck the wagon. The evidence shows that the horses did not cross the track at a right angle but crossed obliquely to the right in the same direction in which the car was traveling. The motorman testified that after the collision one of the horses was beneath the front of his car and the other horse was standing in the track. Several witnesses were called to support the contentions of the plaintiff.

Defendant states in its brief that Mary E. Bennett "is the most important witness on liability in this case." Miss Bennett was called as a witness by the plaintiff. She testified that just before the collision she had been walking in a westerly direction on Warren avenue until she reached Stoddard's driveway (which is a short distance east of Abby street) when her attention was attracted by "the rumbling of a team; . . . it sounded like a heavy wagon going over the rails; . . . then I looked up and saw an electric car coming around Moore's Corners." On cross-examination she was asked: "I am asking now, when you heard this rumbling, this sound you speak of, had you seen the electric car before that?" Her answer was "No." The testimony of this witness justifies the verdict.

As a result of the collision the plaintiff was found under the car with his right leg bent under his body and his foot near his right armpit; on top of the lower portion of his body was the haunch of the off horse. It was necessary to raise the front of the car before the horse and the plaintiff could be removed. Plaintiff's pelvic bones and vertebra were fractured. He received painful surgical and hospital treatment for several months.

The trial justice instructed the jury in the law applicable to issues raised by the evidence. No exceptions were taken by the defendant to the instructions of the trial justice on

the questions of liability and damage. He instructed the jury that the plaintiff must prove by a fair preponderance of the evidence that at the time he was injured he was in the exercise of due care and that his injuries were caused by the negligence of defendant's motorman in the operation of its trolley car.

The trial justice read and granted ten requests to charge presented by defendant. Two of these requests were as follows: "The plaintiff's claim is that when the horses he was driving stepped over the first rail of the car track the electric car had not started to come around Moore's Corners and therefore was not in a position to be seen by him and in order to recover the plaintiff must prove this to be a fact by a fair preponderance of the credible testimony. . . . The defendant claims that the electric car had come around Moore's Corners and was a comparatively short distance from Abby street when the horses were about to be driven on the car track and if you find this to be the fact the plaintiff cannot recover."

At defendant's request the trial justice instructed the jury to answer the following special findings: "Had the electric car started to turn the corner at Moore's Corners before the horses, driven by the plaintiff, stepped across the first rail of the car track?" "Had both the horses and all the wagon except the rear right wheel and right rear corner crossed both car rails when the collision occurred?" The jury answered the first finding "No" and the second one "Yes," and returned a general verdict that the defendant was guilty as alleged in the declaration.

When denying defendant's motion for a new trial the trial justice wrote that he had reached his conclusion uninfluenced by the result of any of the former trials. He said that after a careful consideration of the entire evidence he believed that the jury was fully warranted and justified in reaching a verdict for the plaintiff and that the damages awarded were merely moderate and clearly not excessive for the severe and permanent injuries received by the plaintiff.

I have read all the testimony and find it is sufficient to support the verdict and the special findings and consequently find no error in the decision of the trial justice denying defendant's motion for a new trial. It does not appear to me that the testimony presented by the plaintiff is opposed to any "established physical facts." It is undisputed that the wagon was moved some distance after it was struck by the car. It is impossible to tell exactly where the wagon was just before the collision. This was a question for the jury. In our former opinion we said: "A jury could determine as well as an expert the point of contact" between the car and the wagon. The rule announced in *Wilcox* v. *R. I. Co.*, 29 R. I. 292, and so often followed, should be applied in this case. See also *Spiegel* v. *Grande*, 45 R. I. 437.

The doctrine of concurring verdicts is recognized in this State. *Carr* v. *American Locomotive Co.*, 31 R. I. 234; *Joslin* v. *Rhodes*, 48 R. I. 123. In *Bevan* v. *Comstock*, 48 R. I. 285, this court applied this rule, although the trial justice set the last verdict aside after three successive verdicts for the plaintiff.

Three juries have found the defendant guilty of negligence and two of the trial judges have said the verdicts were supported by the preponderance of the evidence. In view of this record and the answers to the special findings, it is my opinion that this litigation should cease and plaintiff receive the damages awarded by the last jury.

STEARNS, C. J., concurs in the opinion of SWEENEY, J.

RATHBUN, MURDOCK & HAHN concur.

STEARNS, C. J., and SWEENEY, J., dissent.

*Francis E. Sullivan*, for plaintiff.

*Clifford Whipple, Earl A. Sweeney*, for defendant.