WINFIELD SCOTT V. BEULAH GARDNER ET AL.

No. 7697. Decided November 26, 1941.
(156 S. W., 2d Series, 513.)

*Cantey, Hanger, McMahon, McKnight & Johnson, J. A. Gooch,* all of Fort Worth, for appellant.

Where the testimony was to the effect that on the occasion in question the defendant Scott was incapable, because of his intoxicated condition, of knowing or appreciating the consequence of the acts, and therefore could not have been guilty of a violation of the so-called guest statutes, it was error for the trial court to refuse to instruct a verdict for him. Texas Pac. Coal & Oil Co. v. Robertson, 125 Texas 4, 79 S. W. (2d) 830;

Kaplan v. Kaplan, 213 Iowa 646, 239 N. W. 682; Potz v. Williams, 113 Conn. 278, 155 Atl. 211.

*McGown, McGown, Godfrey & Logan, B. E. Godfrey* and *Harry L. Logan,* all of Fort Worth, for appellees.

Intent is not an essential element to a recovery under the guest statutes, and it was error for the court to hold to the contrary. Glassman v. Feldman, 106 S. W. (2d) 721; Mayer v. Johnson, 148 S. W. (2d) 454; 13 Tex. Jur. 237; 5 Am. Jur. 636.

MR. PRESIDING JUDGE SMEDLEY delivered the opinion of the Commission of Appeals, Section B.

The Court of Civil Appeals for the Second Supreme Judicial District has certified five questions to this court in a suit for damages by appellees, Mrs. Beulah Gardner and her husband, George Gardner, against appellant Winifield Scott, on account of personal injuries suffered by Mrs. Gardner when she and her husband, as guests of appellant, were riding in appellant's automobile driven by Mr. Gardner. Recovery is sought under the provisions of the guest statute. (Ch. 225, Acts Reg. Sess. 42nd Leg., 1931; Art. 6701b, Vernon's Ann. Tex. Civ. Stat.) which authorizes recovery of damages by a guest against the owner or operator of an automobile for injuries, death or loss, in case of accident, when the accident is intentional on the part of the owner or operator or is caused by the owner's or operator's "heedlessness or his reckless disregard of the rights of others." Appellees' petition contains the following allegations as to acts and conduct of appellant Scott that caused the accident:

"But in utter disregard of the warning and admonishing of the plaintiff George Gardner and without any provocation on the part of the plaintiff, defendant negligently and in heedless and reckless disregard of the rights of plaintiffs and without respect to their safety, with the utmost gross negligence and purposefully and willfully and intentionally and while drinking and intoxicated, defendant Winifield Scott began kicking in the direction of plaintiffs and kicking the steering wheel of the automobile in which the parties were riding, kicking the hands of plaintiff George Gardner on the steering wheel and by said acts caused him to lose control thereby and causing the automobile to swerve into the ditch on the side of the road and turn over. That plaintiff George Gardner did every-

thing within his power to prevent the accident but that the acts of defendant intentionally, willfully and grossly negligent and done in heedless and reckless disregard of the rights of plaintiff was of such nature that control of the car was entirely taken away from plaintiff, George Gardner, and caused the car thereby to turn over. As a result of said acts and of the turning over of said automobile and the intentional and grossly negligent conduct of the defendant as hereinabove described, serious injuries were proximately caused to the plaintiff Beulah Gardner."

The first and third special issues submitted to the jury and the answers thereto are:

"Issue No. 1: Do you find from a preponderance of the evidence that immediately prior to the time the automobile turned over on the occasion in question that the defendant Winifield Scott kicked the steering wheel of said automobile? The answer was 'Yes'."

"Issue No. 3: Do you find from a preponderance of the evidence that the kicking of said steering wheel by the defendant Winifield Scott, in the event you have found that he did kick the same, constituted 'heedless and reckless disregard of the rights of others,' as that term is defined for you above, on the part of the defendant Winifield Scott? The answer was 'Yes'."

The first two questions certified are:

"1. Does the petition, which alleges that the defendant Scott while intoxicated 'began kicking in the direction of plaintiffs and kicking the steering wheel of the automobile in which the parties were riding, kicking the hands of the plaintiff George Gardner on the steering wheel and by said acts caused him to lose control thereby and causing the automobile to swerve into the ditch on the side of the road and turn over,' charge more than one act causing the accident?

"2. Or, is our interpretation correct, wherein we hold that the meaning of the allegations simply is to charge the defendant with kicking the steering wheel, thereby kicking the hands of the driver (Gardner) which were on the wheel and thereby causing Gardner to lose control of the automobile, resulting in the wreck?"

The Court of Civil Appeals in its tentative opinion accompanying the certificate expressed the conclusion that special issue

No. 1 did not conform to the allegations of plaintiffs' petition, in that the issue submitted to the jury was whether appellant Scott kicked the steering wheel of the automobile, whereas "the gist of the pleading is to charge Scott with kicking that contacted the hands of the driver, thus causing the driver to lose control of the car." In further explanation of its construction of the petition the tentative opinion states:

"The so called acts are pleaded as one which bring about one condition and the consequent result. Namely, a kicking in the direction of the plaintiffs and kicking the steering wheel, with the result that the defendant kicked the hands of the driver and caused him to lose control of the car."

**1, 2** In our opinion the petition is fairly and reasonably construed as alleging more than one act causing the accident. The allegations are in substance that the defendant kicked in the direction of plaintiffs *and* kicked the steering wheel of the automobile *and* kicked the hands of Mr. Gardner on the steering wheel and by said *acts* caused him to lose control of the automobile. The petition alleges that Mr. Gardner was caused to lose control "by said acts," meaning the acts of appellant in kicking in the direction of plaintiffs, in kicking the steering wheel and in kicking Mr. Gardner's hands. The pleading might have been amended to show more distinctly that more acts than one were alleged as causing the accident, but no special exception was directed to that portion of the petition referred to in the first certified question. In the absence of special exception the petition will be liberally construed in the pleader's favor and to support the judgment. Schuster v. Frendenthal, 74 Texas 53, 11 S. W. 1051; Hovencamp v. Union Stockyards Co., 107 Texas 421, 180 S. W. 225; Humphreys Oil Co. v. Liles, (Com. App.) 277 S. W. 100. What has been said answers the first certified question in the affirmative and the second in the negative.

**3** The certificate states that appellees pleaded that appellant Scott "was in truth and in fact intoxicated and drunk," that both appellees testified to appellant's taking several drinks and then sets out portions of appellees' testimony. The substance of Mrs. Gardner's testimony, quoted in the certificate is: Mr. Scott was mumbling as though he was driving an airplane and he would say "Give her the gun, Jazz." He called Mr. Gardner "Jazz." She cannot explain drunkards except that she knows that they mumble sometimes and do not realize what

they are doing or saying and she thinks that is what she means by "drunk." When he said "Give her the gun, Jazz" she did not know what he was talking about because she had never ridden in an airplane. At the time it sounded unintelligent to her.

The substance of Mr. Gardner's testimony with respect to Scott's condition, quoted in the certificate, is: Appellant Scott was staggering when he got into the car. He kept remonstrating with Mrs. Gardner and what he said "did not sound like he was in his right mind." He was not talking with any sense. He was not "at himself." In his opinion appellant was drunk at the time. A "drunk" means to him, the witness, "a person that does not know what they are doing," and that is the condition he thinks appellant was in when he left the house and until the accident.

The certificate sets out testimony of Mr. Gardner about the acts of Scott immediately preceding the accident. It is that after the car had been driven about 15 miles and a few minutes before the accident appellant reached over, pushed the car out of gear and "gave a whoop and hollered, 'Give her the gun, Jazz'." When they had gone a little farther appellant began to choke and curse Mrs. Gardner. They went a few more yards when appellant put his foot over into the steering wheel and held it there until the car turned over.

The third question propounded in the certificate is: "Does the undisputed testimony of the two plaintiff's touching Scott's intoxication establish the fact that Scott was drunk on the occasion in question, as being an undisputed fact, there being no suspicious circumstances attendant upon the giving of such testimony by the plaintiffs, and they being corroborated by their testimony detailing the acts and conduct of Scott, at the time he is charged with being drunk?" Answers to this and the other questions must be based upon the facts set out in the certificate and not upon a consideration of the evidence contained in the statement of facts. Goldstein v. Union National Bank, 109 Texas 555, 561, 213 S. W. 584; Employers' Liability Assurance Corp. v. Young County Lumber Co., 122 Texas 647, 657, 64 S. W. (2d) 339.

Undoubtedly the undisputed testimony of appellees quoted in the certificate would have established as a matter of law the fact that appellant was under the influence of intoxicating liquor, had the testimony come from disinterested witnesses.

The substance of appellees' testimony is that appellant was drunk, and appellant's conduct, as disclosed by appellees' testimony, was that of a drunken person. The term "drunk" is not a well defined term. The condition is of varying degrees, from mere exhiliration to a state of unconsciousness. Paris & G. N. R. R. Co. v. Robinson, 104 Texas 482, 486, 140 S. W. 434. From the facts given, it clearly appears that the appellant Scott was not drunk to the extent of unconsciousness. He staggered but was able to get into the car. His conversation was that of one foolishly drunk but he did talk and curse. His unfortunate use of his hands and feet demonstrates that he was not in a state of helplessness. Mrs. Gardner's testimony that she meant by "drunk" a person who does not realize what he is saying or doing and Mr. Gardner's testimony that appellant was drunk and did not know what he was doing were expressions of their opinions, and therefore such testimony, even if it had been that of disinterested witnesses, would not have been conclusive proof of the extent or degree of appellant's intoxication. Gulf, C. & S. F. Ry. Co. v. Davis, 225 S. W. 773, 775; Gulf, C. & S. F. Ry. Co. v. Dunman, 85 Texas 176, 19 S. W. 1073; Simmonds v. St. Louis, B. & M. Ry. Co., 127 Texas 23, 27, 91 S. W. (2d) 332; Moore v. State (Tex. Cr.) 150 S. W. (2d) 91.

Moreover, because of the general rule that requires the submission to the jury of the credibility of the testimony of an interested witness, it cannot be said that the undisputed testimony of appellees set out in the certificate establishes as a matter of law the fact that appellant was drunk. See Gulf, C. & S. F. Ry. Co. v. Davis and Simmonds v. St. Louis, B. & M. Ry. Co., supra.

Our answer to the third certified question, the reasons for and the materiality of which appear more fully hereinafter, is: The undisputed testimony of the two plaintiffs does not establish the fact that appellant was drunk "as being an undisputed fact," or as a matter of law, the question whether appellant was drunk and the extent or degree of his drunkenness being for the jury's determination and consideration in answering the ultimate fact issue submitted to it in Special Issue No. 3 relating to heedless and reckless disregard.

4. The fourth certified question, which has reference to the third special issue, is: "Does such undisputed testimony show that Scott, as a matter of law, could not be guilty of an act that was the result of a conscious indifference to the rights and welfare of the plaintiffs who were affected by it?"

As has been said, the testimony of appellees and other evidence set out in the certificate do not show as a matter of law that appellant was intoxicated to the extent of unconsciousness. There is not presented in this case, and we do not decide, the question whether the owner or operator of an automobile is liable for injury to his guest caused by his act or omission when he is so drunk that he is unconscious. The facts before us are such that the question for decision may be, we think fairly, thus stated: Does drunkenness, which has not made the owner or operator of an automobile unconscious or entirely helpless, absolve him from liability for injury to his guest, when the accident and injury are caused by the owner's or operator's acts or conduct which, if he were sober, would evince a heedless and reckless disregard of the rights of others?

Voluntary intoxication is not a defense to crime, Article 36, Penal Code. Even when specific intent must be established for conviction, mere intoxication is never a defense, neither as to intent nor as to guilt. Ferdandez v. State, 135 Texas Cr. 12, 116 S. W. (2d) 1067.

In a suit for damages caused by negligence neither the plaintiff nor the defendant is relieved from the consequences of his negligent act or omission by the fact that he was drunk at the time the injury was done. Paris & G. N. R. R. Co. v. Robinson, 104 Texas 482, 140 S. W. 434; San Antonio Public Service Corp. v. Fraser, 91 S. W. (2d) 948; Bageard v. Consolidated Traction Co., 68 N. J. L. 652, 45 Atl. 620; Herrick v. Washington Water Power Co., 75 Wash. 149, 134 Pac. 934; McMichael v. Pennsylvania Ry. Co., 331 Pa. 584, 1 Atl. (2d) 242. In Paris & G. N. R. R. Co. v. Robinson, supra, the court quoted with approval the statement of this principle in Thompson on Negligence, in the following language: "Voluntary intoxication cannot be pleaded to avoid the consequences of one's own negligence." The rule is thus given in McMichael v. Pennsylvania Ry. Co., supra: "The degree of care required of one who becomes intoxicated does not differ from that required of a sober person." The opinion in Herrick v. Washington Power Co., supra, contains the broad statement: "It is a universal rule that voluntary drunkenness is no excuse for negligence, either primary or contributory." If intoxication is not a defense to crime and does not excuse ordinary negligence, it should not relieve one from the consequences of a wrong greater than mere negligence, his heedless and reckless dis-

regard of the rights of others. As said in Powell v. Berry, 145 Ga. 696, 89 S. E. 753, a negligence case: "To hold otherwise would be to put a premium upon drunkenness."

Appellant, citing Kaplan v. Kaplan, 213 Iowa 646, 239 N. W. 682, which holds that an automobile driver's unconscious conduct while asleep does not evince a reckless disregard of the rights of his guest, argues that he was incapable, because of his condition due to intoxication, of knowing or appreciating the consequences of his acts, and therefore could not have been guilty of a violation of the guest statute. The argument stresses the words "conscious indifference" contained in the trial court's definition of heedless and reckless disregard and the use of the same words in the approved definition of gross negligence. In this connection decisions are cited in which it is said that the language of the statute "heedlessness or his reckless disregard of the rights of others" conveys the same meaning, or substantially the same meaning, as does the term "gross negligence." See Rowan v. Allen, 134 Texas 215, 134 S. W. (2d) 1022; Napier v. Mooneyham, 94 S. W. (2d) 564; Raub v. Rowe, 119 S. W. (2d) 190.

The argument is answered by the fact already noted that the evidence given in the certificate does not conclusively prove that appellant was intoxicated to the degree of unconsciousness or that he was incapable of conscious conduct. It is also to be observed that liability for heedless and reckless disregard of the rights of others under the guest statute, like liability for negligence ordinary or gross, arises out of the act or omission of the defendant and not out of his mental condition. The inquiry is whether the conduct of the defendant was of such character, or evidenced such entire want of care, as to raise the belief that the act complained of was the result of a conscious indifference to the rights and welfare of the person affected by it.

The Iowa guest statute construed in Frazer v. Brannigan, 228 Ia. 572, 293 N. W. 50, made the owner or operator liable when damages resulted from the "reckless operation" of the automobile. The court, in discussing the standard for determination of the question whether the driver's conduct was reckless, said:

"The test is not, as suggested in the brief of appellant, the good intentions or mental attitude of the driver but rather

his acts and omissions * * *. 'It is the actions and conduct, and not the mental attitude of the actor that measure the degree of care and determine whether or not one is proceeding without heed of, or concern for, a consequences, and with a heedless disregard for, or indifference to, the rights of others'."

See also Bushnell v. Bushnell, 103 Conn. 583, 131 Atl. 432, 44 A. L. R. 785; Coner v. Crittenden, 116 Conn. 78, 163 Atl. 472.

Negligence implies ability to perceive and power of volition. Bushnell v. Bushnell, supra; Herrick v. Washington Water Power Co., 75 Wash. 149, 134 Pac. 934; Lobert v. Pack (Pa.) 9 Atl. (2d) 365. But mere drunkenness does not excuse negligence, and thus it is not regarded as destructive of the element of understanding or perception that enters into the tort. Drunkenness does not disprove negligence. On the contrary, it is a fact admissible in evidence as tending to prove negligence. Ford Motor Co. v. Whitt, 81 S. W. (2d) 1032, (application for writ of error refused); Southern Traction Co. v. Kirksey, 222 S. W. 702; Northern Pacific Ry. Co. v. Craft, 69 Fed. 127; Herrick v. Washington Water Power Co., 75 Wash 149, 134 Pac. 934, 939; McIntosh v. Standard Oil Co., 89 Kan. 289, 131 Pac. 151.

Similarly, intoxication which has not reached the state of unconsciousness, does not and should not excuse heedless and reckless conduct, but it is an evidentiary fact that may be considered by the jury, together with other circumstances, as tending to prove such conduct. This being true it follows, in our opinion, on the same principle as that applicable in cases or ordinary negligence, that evidence that the owner or operator of an automobile was intoxicated, but not unconscious, at the time of the accident does not prove, or certainly does not conclusively prove, that he was incapable of heedless and reckless disregard, or of conscious indifference, within the meaning of the guest statute.

The Supreme Court of Wisconsin expressed the opinion in Tomasik v. Lanferman, 238 N. W. 857, that "The driving of a car upon our highways by one intoxicated fully responds to all of the elements necessary to constitute gross negligence," and further that "The driving of a car by one in such condition betrays an absence of any care, and indicates such recklessness and wantonness as evinces an utter disregard of consequences."

In Napier v. Mooneyham, 94 S. W. (2d) 564, the reckless conduct complained of consisted of driving at an unlawful rate of speed and in failing to exercise proper control of the automobile. There was evidence that the driver was intoxicated. In overruling the contention that the trial court should have instructed a verdict for the defendant, because the testimony of the plaintiff to the effect that the defendant seemed to "pass out" or "go to sleep" immediately before the accident conclusively proved that the injury was not caused by "his heedless and reckless disregard for the rights of others," the court, speaking through Associate Justice Funderburk, expressed, correctly in our opinion, the conclusion that "the question of intoxication and other elements enter into consideration."

We hold that drunkenness, which has not made the owner or operator of an automobile unconscious or entirely helpless, does not absolve him from liability for injury to his guest when the accident and injury are caused by the owner's or operator's acts or conduct which, if he were sober, would evince a heedless and reckless disregard for the rights of others," this conclusion answers the fourth certified question in the negative.

5   The answer to the fifth certified question is indicated by what has been said above in discussing the third and fourth questions and is supported by the authorities which have been cited. The question is: "Or, was it necessary that the matter of Scott's intoxication be submitted to the jury, together with the question of whether or not, at the time, he was in such a mental state that his act evidenced a conscious indifference to the rights and welfare of the plaintiffs?" Our answer is: The question of appellant's intoxication was not an ultimate fact issue and it was not necessary that it be submitted to the jury as an issue. The trial court's action is not so submitting it was correct. Appellant's intoxication was a fact to be considered by the jury, together with other circumstances, in answering the third special issue in the trial court's charge, which in our opinion sufficiently and correctly submitted the question as to appellant's heedless and reckless disregard, or conscious indifference.

Opinion adopted by the Supreme Court November 26, 1941.