DR. PEPPER COMPANY et al.,

Appellants,

v.

DR. PEPPER BOTTLING COMPANY OF GONZALES, Inc., et al., Appellees.

No. 3414.

Court of Civil Appeals of Texas. Waco.

Dec. 28, 1956.

Rehearing Denied Jan. 17, 1957.

Bobbitt, Brite & Bobbitt, San Antonio, W. T. McNeil, Edna, for appellants.

Miller & Dreyer, Gonzales, Threlkeld, Saegert & Saegert, Seguin, for appellees.

TIREY, Justice.

This is a plea of privilege case (non-jury). It does not yield to a simple statement and the pleadings are complicated and involved.

The court overruled each of the defendants' pleas of privilege and each perfected his appeal. There was no request for findings of fact and conclusions of law and none filed.

The plaintiff, Dr. Pepper Bottling Company of Gonzales, Inc., a private corporation and a resident citizen of Gonzales County, sued the Dr. Pepper Company, a foreign corporation of Dallas County, and joined in the suit S. A. Strane and Wm. F. Strane, each resident citizens of Victoria County, Texas. Plaintiff alleged that it had a license agreement with the parent company which it called a "bottler's license agreement," wherein it had the exclusive right to carbonate and bottle under the trade name of the parent company and sell and distribute in bottles a drink known as Dr. Pepper, in the counties of Gonzales, Lavaca and a part of Caldwell, and that such agreement shall continue as long as the parent company, or its successors, continue to manufacture Dr. Pepper syrup. They attached a copy of the license agreement as Exhibit A to the petition and made it a part; that upon the issuance of such agreement plaintiff commenced to bottle and distribute said drink and in so doing it spent large sums of money for advertising and production of the drink and it built up a large consumption of said drink

in its territory and that same became a valuable property right; that on the 20th of February 1954 plaintiff made a contract with defendants Strane and under the terms of said contract plaintiff agreed to sell to the Stranes certain personal property described specifically, including its office furniture and fixtures and office supplies for the sum of $20,000 in cash, upon delivery of this personal property to the Stranes; that in compliance with the rules of the parent company relating to the sale of its franchise it was stipulated in the contract with the Stranes that such contract was conditioned upon the surrender of plaintiff to the parent company of such license agreement, and the Stranes filed with the parent company an application for bottler's license agreement for said territory, it being the intention of the parties to this contract that if Stranes' application was not accepted by the parent company that the plaintiff's contract with the Stranes would be terminated. Plaintiff attached a copy of this contract to his original petition as Exhibit B and made it a part of its complaint. That the Stranes duly filed application for transfer of the franchise with the parent company and the parent company agreed that they would accept the application of the Stranes and assured plaintiff that the Stranes were acceptable to them as bottlers and that the sale would be consummated. Plaintiff relied upon such representations and proceeded to close out its business and liquidate its assets, but the parent company acted in bad faith and refused to accept the Stranes as bottlers notwithstanding they had promised to do so. Plaintiff further alleged that the parent company wanted the territory to add to the territory then being handled by a bottling plant owned by the parent company in San Antonio, and that during the month of March, after having accepted defendants Strane as bottlers and after having agreed to issue a license to the Stranes, the parent company represented to the Stranes that if any creditor of this plaintiff made any trouble about the matter the parent company could not continue to furnish syrup for said territory, and by such threats and misrepresentations induced the Stranes to breach their contract with plaintiff, and the parent company in so doing intended to and had for its purpose the taking over of said territory of the plaintiff and depriving plaintiff of the sale value thereof, which was $12,000, and such acts constituted a breach of the contract in the amount of $8,000; that the parent company did not act in good faith in the cancellation of the franchise by cancelling it solely for the purpose of enabling the parent company to add the territory of the plaintiff to the territory served by the parent company; that such franchise was worth the sum of approximately $20,000, and damaged plaintiff in the sum of $20,000; that plaintiff had personal property in its territory of approximately 6,000 cases of Dr. Pepper bottles belonging to it and that same were distributed among 7,000 customers located in the counties of Gonzales, Lavaca and Caldwell; that the parent company, immediately after cancelling plaintiff's franchise, sent its trucks into the territory of plaintiff and picked up and converted to its own use and benefit all of the bottles in said territory and the cases also and converted the same to its use and benefit, and that the cases and bottles have a reasonable market value of $1.75 per case. In addition thereto, the Dr. Pepper Company intermixed and intermingled its cases with the cases of this plaintiff, and its bottles with the bottles of plaintiff so that plaintiff's property can no longer be identified, although most of said cases were picked up and converted to its use and to plaintiff's damage in the sum of $10,500. Plaintiff further alleged that due to the fact that it relied upon the representations made to it by the parent company and because he believed the sale to the Stranes would be consummated, did not send its trucks out to service its territory for a period of three working days; that the parent company, although it had induced the Stranes not to go through with their trade, used the foregoing as a pretext for cancelling the license agreement with parent company and for

converting to its own use the personal property of plaintiff, as well as the license agreement, and prayed for judgment against the defendants jointly and severally for damages for the breach in the amount of $8,000, and it asked for judgment against the parent company in the sum of $20,000, and further damages for the cancellation of its bottler's license agreement and for conversion of the personal property in the sum of $10,500.

Thereafter the Guadalupe Valley Creamery Company, a corporation and a resident citizen of Guadalupe County, filed its plea of intervention, complaining of the Dr. Pepper Company of Dallas and defendants Strane and also the Dr. Pepper Bottling Company of Gonzales (plaintiff in this cause) and for plea of intervention set up in effect that on the 31st of March, 1949 the plaintiff executed and delivered to it a promissory note in the sum of $20,000, payable in installments, and that because of the failure of plaintiff to pay an installment of $400 due on August 1, 1953, that it had matured the balance of the note in the amount of $14,850 principal, unpaid interest, penalties and attorney's fees, and alleged that the note was secured by chattel mortgage of even date with said note, creating a valid chattel mortgage lien on certain personal property and set out the personal property by photostatic copy of the same and attached it to the plea of intervention and marked it Exhibit B, the note having been marked as Exhibit A, and attached each to the plea of intervention. The plea of intervention then proceeds to allege substantially the contract of the plaintiff with the Dr. Pepper Company of Dallas, as well as the contract and agreement of the plaintiff with the Stranes, and the allegations in the plea are substantially to the same effect as those contained in the allegations of plaintiff's original petition. Intervenor's plea then alleges specifically that the Dr. Pepper Company, by wrongful acts, appropriated to itself and converted to its own use the soft drink bottling operations and rights in connection with the license agreement without the consent of the mortgagee, and also alleged that the Dr. Pepper Company converted the bottles and cases described in the plea of intervention. It prayed for judgment jointly and severally against the Stranes and the Dr. Pepper Company of Dallas in the amount of $12,398.60 and it prayed for judgment against the Dr. Pepper Bottling Company of Gonzales for the sum of $10,000, with interest and attorney's fees.

The Dr. Pepper Company seasonably filed its plea of privilege setting up that it was a foreign corporation and had its principal place of business in Dallas, Dallas County, Texas, said plea being in compliance with Rule 86, Texas Rules of Civil Procedure.

The Stranes likewise seasonably filed their plea of privilege to be sued in Victoria County, the county of their residence, such plea being in compliance with Rule 86, supra.

Plaintiff seasonably filed its controverting affidavit to the pleas of privilege filed and alleged substantially that its cause of action against defendants Strane was grounded and founded upon a breach of contract in writing performable in Gonzales County, the county in which it filed its suit, and that venue is maintainable against the defendants Strane in Gonzales County under the provisions of subdivision 5 of Art. 1995, V.A.C.S. Plaintiff alleged that its cause of action against Dr. Pepper Company of Dallas is one for and includes the breach of the above mentioned contract that it made to and with the Stranes and that the action of plaintiff against the Dr. Pepper Company being founded in fraud and misrepresentation, this court has venue of the plaintiff's action under the provisions of subdivision 7 of Art. 1995, supra, and that defendants Strane are necessary parties to this cause of action against the Dr. Pepper Company, and that this court has venue against the Dr. Pepper Company and the Stranes under the provisions of subdivisions 7 and 29a of Art. 1995, supra.

The controverting affidavit further alleged that the cause of action against the Dr. Pepper Company for conversion of its personal property, some of which is located in Gonzales County, and this court has venue of this cause under the provisions of subdivision 10 of Art. 1995, supra, and that the defendants Strane are necessary parties to said cause of action, and that this court has venue of the persons of the defendants Strane under the provisions of subdivision 29a of Art. 1995, supra.

The controverting plea further alleged that it has a cause of action against the Dr. Pepper Company for trespass by virtue of the conversion of its personal property and that this court has venue of this cause under the provisions of subdivision 9 of Art. 1995, supra, and that defendants Strane are necessary parties to this cause of action, and that by reason thereof this court has venue of the persons of the defendants Strane under subdivision 29a of Art. 1995, supra.

Plaintiff made reference to its original petition and made it a part of its controverting affidavit.

The Dr. Pepper Company of Dallas assails the judgment entered by the trial court on two points. They are substantially: (1) The court erred in overruling defendant's plea of privilege because the evidence presented at the hearing by plaintiff and intervenor was insufficient to sustain venue in Gonzales County under any of the exceptions to the venue statute relied upon by plaintiff and intervenor. (2) The court erred in permitting intervenor to introduce evidence at the hearing on the plea of privilege.

Appellants Strane assail the judgment entered on two grounds. They are substantially: (1) The court erred in overruling their pleas of privilege on the basis of subdivision 5 of Art. 1995, supra, and (2) on the basis of subdivision 29a of Art. 1995, supra.

V. A. Sala, who was the president of plaintiff company, testified that he was familiar with the bottles and cases of his company and that some of these bottles and cases were picked up in Gonzales County by the Dr. Pepper Company, and that the bottles and cases picked up by appellant were the property of plaintiff, and that he saw some of the bottles and cases of appellee on the trucks of the Dr. Pepper Company. Mr. Sala testified in part:

"Q. Mr. Sala, have you been in any places of business, during and subsequent to the time that Dr. Pepper Bottling Company ceased its deliveries in Gonzales County? A. Yes, sir.

"Q. Do you—this was in Gonzales County, now? A. Yes, sir.

"Q. Do you know, of your own knowledge, that bottles which were deposited—which were owned by Gonzales Dr. Pepper Bottling Company—and deposited with customers in Gonzales were, at a later date, picked up by Dr. Pepper Company, which is a defendant herein? A. Yes, sir.

"Q. Mr. Sala, state whether or not you ever saw any cases or bottles that really were property of Dr. Pepper Company on trucks of—of the plaintiff in this case—on trucks of Dr. Pepper Company, defendant in the case. A. Yes, sir.

"Q. This was subsequent to—A. After we had ceased operations, yes, sir."

He further testified:

"Q. Mr. Sala, there was introduced this morning a contract of purchase and sale between the Dr. Pepper Company of Gonzales and S. A. and William F. Strane. Did you sign that contract? A. Yes, sir.

"Q. Where did you sign it? A. In Gonzales County.

"Q. In Gonzales County? A. Yes, sir.

"Q. Did you at any time receive advice that S. A. and William F. Strane were not going through with that contract? A. I don't recall whether they called me or I called them, and I talked to Mr. Strane.

"Q. Which Mr. Strane? A. Mr. S. A. Strane.

"Q. And what did he tell you? A. He told me that he had received a letter from W. W. Clemmons, who is vice-president of the company, stating that they would not approve the contract, or if he went through with the contract, that they could not guarantee him shipment of syrup to the territory.

"Q. Why? A. For fear of creditors coming back on him for claims against me."

While Mr. Strane was on the witness stand he identified a letter written to him by the Vice-President of the Dr. Pepper Company of Dallas. The letter was addressed to the attention of Mr. Sala as president of plaintiff company, and it is as follows:

"After the termination of the Dr. Pepper Bottler's License Agreement issued to Dr. Pepper Bottling Company of Gonzales, Inc., the Dr. Pepper Company in servicing the territory theretofore covered by said license agreement has accumulated from the retail dealers in trade the following listed quantities of trademark Dr. Pepper bottles for which the Dr. Pepper Company assumed or paid the bottle deposits thereon owing to the retailers as shown in the following list, which bottles and cases were put out in the trade by the Dr. Pepper Bottling Company of Gonzales, Inc., prior to termination of the license:

"390 cases (hulls) of 24 bottles each @ 80¢ deposit, $312.00

1,929 cases (hulls) of 24 bottles each @ 50¢ deposit, $964.50

5,647 loose bottles at a deposit of 2¢ each, $112.94

302 loose empty pasteboard cartons at a deposit of 2¢ each, $6.04. Total $1,395.48

"These bottles have been stored in a warehouse leased by the Dr. Pepper Company in Gonzales, Texas, at 608 St. James Street. The Dr. Pepper Bottling Company of Gonzales, Inc., may obtain possession of these bottles and cases upon the payment to Dr. Pepper Company in cash of the aforesaid sum of $1,395.48. The Dr. Pepper Company will have an agent available to meet with a duly authorized officer or agent of the Dr. Pepper Bottling Company of Gonzales, Inc., there in Gonzales at any reasonable hour in the day to make delivery of such bottles and to receive the cash payment above referred to upon your first giving us a reasonable notice of the time and date of such meeting. Actual cash or a cashier's check on any duly qualified and acting state or national bank in Texas will be required. If you desire to acquire possession of these bottles by paying the above amount, we request that it be done within thirty days from the date hereof.

"We wish to again notify and request the Dr. Pepper Bottling Company of Gonzales, Inc., to eliminate the name or words, 'Dr. Pepper', from its corporate or business name and to cease using the name, words and trade mark, 'Dr. Pepper,' in its corporate business, as it became obligated to do upon termination of the above referred to license agreement."

When this letter was tendered in evidence, counsel for the Dr. Pepper Company of Dallas, after reading it, stated: "We haven't any objection if you just want to introduce the letter."

There was tendered in evidence a contract of sale between the plaintiff and defendants Strane. This contract, among other things, bound the plaintiff to sell various items of personal property to defendants Strane, including "one Dixie Filler, one D & L Washer, one Majonnier carbonator cooler, one batch water filter plant, all syrup room fixtures including one mixing tank, two storage tanks and syrup pump; all warehouse equipment owned by seller, including two platform jacks, and approximately forty warehouse skids; one

1947 1½ ton truck, one 1947 Ford 1½ ton truck, one 1948 Ford pickup, one 1941 1½ ton Ford truck, one 1946 Ford 1 ton truck, 5 ice coolers, all bottles and cases in warehouse of seller including 160 cases of Root Beer and about 750 cases of Dr. Pepper bottles * * * all bottles in sellers trade territory except Cheer-up and Mission Orange bottles; all stocks of syrup, bottled drinks and all other raw material used for the bottling of soft drinks, all repair parts, tools, paint and all other miscellaneous personal property owned and used by Seller in his bottling business now operated by it in its building in the City of Gonzales, in Gonzales County, Texas * * * and the office furniture and fixtures and office supplies situated in said building." The contract further provided: "The Buyer agrees to purchase the above mentioned personal property from Seller in consideration of the sale of delivery of which Buyer agrees to pay to Seller the sum of twenty thousand dollars ($20,000.00), the same to be paid in cash upon delivery of said personal property and bill of sale thereto."

■ In this cause both appellants went to trial on their pleas of privilege and neither appellant filed any motion asserting that there was a misjoinder of parties or causes of action. (In the absence of special exceptions to the petition or the controverting affidavits, each will be liberally construed in the pleader's favor. See Scott v. Gardner, 137 Tex. 628, 156 S.W.2d 513, points 1 and 2, 141 A.L.R. 50).

■ Going back to the testimony tendered, we think there was sufficient evidence tendered to sustain the trial court's implied finding that the Dr. Pepper Company of Dallas had taken possession of personal property in Gonzales County that belonged to the plaintiff, and it was asserting title and ownership to the property as against the plaintiff and that a part of this property so taken was located in Gonzales County. We think the evidence is sufficient to sustain venue as against the Dr. Pepper Company of Dallas County, the parent company, under subdivision 27 of Art. 1995, V.A.C.S.

■ The evidence is without dispute that defendants Strane refused to carry out the contract that they executed with the plaintiff and this contract was, we think, under its terms which we have quoted in part, performable in part in Gonzales County. We are of the view that the testimony is sufficient to support the trial court's judgment in overruling plea of privilege of the defendants Strane to be sued in Victoria County, the county of their residence, and that same brings this cause within subdivisions 5 and 29a of Art. 1995, V.A.C.S.

As a reviewing court, it is our duty to consider the evidence and the inferences properly to be drawn therefrom in the light most favorable to the party obtaining the verdict, and it is our duty in considering controverted issues of fact to accept as true that testimony which tends to support the verdict. 3–B Tex.Jur. pp. 370 and 372. (This general rule also applies to cases tried without the aid of a jury). There is another general rule to the effect that " 'the rule is well settled that the judgment of a trial court will not be set aside if there is any evidence of a probative nature to support it and that a court of civil appeals cannot substitute its findings of fact for those of the trial court if there is any evidence in the record to sustain the trial court's findings.' See Cavanaugh v. Davis, 149 Tex. 573, 235 S.W.2d 972, 977; Woodward v. Ortiz, [150 Tex. 75] 237 S.W.2d 286. See also cases collated under 4 Texas Digest, Appeal & Error ■ See also Burrus Mills v. Phillips, 260 S.W.2d 427, 430 (no writ history). Moreover, since this record shows that there was evidence of a good faith contract in the sale by the plaintiff to the defendants Strane, and since there was enough evidence tendered to show that the Dr. Pepper Company of Dallas may have wrongfully contributed to defendants Stranes' refusal to carry out the terms of their contract with plaintiff, we think that the court's action in over-

ruling defendants' pleas of privilege comes within the provisions of subdivision 29a of Art. 1995, V.A.C.S. See Ladner v. Reliance Corporation, Tex., 293 S.W.2d 758 (S.Ct.). This appears to be the last expression of our Supreme Court to date on pleas of privilege.

Believing that the evidence and the record as a whole are sufficient to sustain the implied finding of the court to the effect that a prima facie case was established against the Dr. Pepper Company of Dallas, as well as the Stranes, it is our view that the judgment of the trial court should be affirmed.

We have considered each point assigned by appellants and each is overruled.

Accordingly, the judgment of the trial court overruling each of the pleas of privilege is affirmed.

HALE, J., took no part in the consideration and disposition of this case.