FIRST STATE BANK of BREMOND,
Texas, et al., Appellants,

v.

Don C. BRANNON, Appellee.

No. 5181.

Court of Civil Appeals of Texas,
Waco.

Oct. 19, 1972.

Robert G. Carter, Marlin, for appellants.

George R. Moorman, Brenham, for appellee.

OPINION

JAMES, Justice.

This is a suit growing out of a sheriff's sale under execution.

Defendant-Appellant First State Bank of Bremond, Texas, held a judgment against one John S. Allen, Jr., about $5000.00 of which was unpaid. Allen was the owner of one-half of the mineral rights in 1120.1 acres of land located in Robertson County, Texas. Plaintiff-Appellee Don C. Brannon owned the surface rights of this land and the other half of the mineral rights.

The Bank caused a writ of execution to be issued out of the District Court of Robertson County, and an order of sale to be had of the Allen mineral rights, pursuant to said judgment against Allen, and notices of the sale recited that such sale would take place on January 5, 1971 at the county courthouse of Robertson County located at Franklin, Texas, the county seat.

On the appointed date of the sale, and before the sale actually took place, Brannon and his attorney met at the Sheriff's office (of Robertson County) with two of the Bank's officials and the Bank's attorney. From this point on, testimony as to exactly what took place is in many respects conflicting and sharply disputed; however, the following is an account of the facts material to a disposition of this case as we view it:

Brannon at the time had $6000.00 in cash on his person which he had brought with him to enable him to make a cash bid on the property to be sold under execution; however, his attorney recommended that he try to negotiate a loan from the Bank instead, in the event he became high bidder.

Neither the Bank's attorney nor Brannon's attorney knew exactly how many acres of mineral rights Allen owned, and therefore neither the Bank nor Brannon were in a position to make a firm bid upon the property. However, these parties after considerable discussion and negotiation agreed as follows: That Brannon would bid $10.00 per mineral acre and the Bank would bid $9.00 per mineral acre, each party's bid being based upon whatever number of acres the two attorneys would agree that Allen owned, after the attorneys had had an opportunity to examine the title; that the Bank would loan Brannon the necessary money to pay for the minerals when the exact amount required was ascertained; that the Bank's attorney would prepare the note for Brannon's signature due six months from date bearing 6½% interest per annum after the exact principal amount had been ascertained. At this point the Bank's attorney testified the agreement was that Brannon's wife was the one to sign the note and the sale was to be to Mrs. Brannon, whereas Brannon and his attorney testified the agreement was for Brannon himself to sign the note and to be the purchaser at the sale.

Immediately following these negotiations, the Sheriff of Robertson County, Texas, E. P. Elliott, acting through his deputy, one Terry Fletcher, proceeded to hold the sale, on which occasion Brannon bid $10.00 per mineral acre, and the Bank bid $9.00 per acre. The Bank's attorney testified that he told the deputy sheriff that he was making the $9.00 per acre bid so that in the event Mrs. Brannon did not pay for the subject mineral rights that the sheriff could deed the subject property to the Bank; however, Brannon and his attorney denied all this except that the Bank's attorney simply bid $9.00 per acre; whereas, the deputy sheriff testified that he had no recollection that the Bank's attorney made any such statements, but he did remember something about $9.00 per acre.

Nevertheless, the deputy sheriff struck off the subject property to Brannon as the highest and best bidder.

Between January 5, 1971 (the date of the sale) and January 11, 1971, the Bank's attorney made an examination of the title and concluded that Allen owned 550 acres of minerals, and prepared a note in the principal amount of $5500.00 in accordance with their agreement. The Bank's attorney wrote Brannon's attorney a letter dated January 11, 1971, in which he explained his conclusions as to the number of acres of minerals Allen owned, enclosed the $5500.00 note and in which letter he requested that Mrs. Brannon sign the note and return the note to him, the Bank's attorney. He further stated that upon his receipt of the signed note that he would have the sheriff execute the deed and would mail the deed to him, Brannon's attorney. The note enclosed in this letter did not have any name typewritten at the bottom so as to indicate who should sign it, nor did the body of the note recite the identity of the maker.

On January 22, 1971, the Bank's attorney again wrote Brannon's attorney requesting that Mrs. Brannon return the note to him, the Bank's attorney. On January 27, 1971, Brannon's attorney wrote Brannon enclosing the note which he had previously received from the Bank's attorney, and in which letter he asked Brannon to sign the note and return it to the Bank's attorney. Brannon did sign the note and returned it to the Bank's attorney. On February 3, 1971, the Bank's attorney wrote Brannon a letter and returned the note to him (Brannon) and in which letter he expressed his regret that "we could not consumate the transaction." Upon his receipt of this letter and the returned note, Brannon contacted his own attorney who in turn called the Bank's attorney on the telephone and inquired "what happened." Whereupon the Bank's attorney replied, "That was not our deal", and said he wanted Brannon's wife's signature on that note too. After this telephone conversation between the

two attorneys, Brannon did get his wife to sign the note and then returned it to the Bank's attorney. On February 18, 1971, the Bank's attorney wrote Brannon a letter and returned the note to him, saying the "Bank is no longer interested in the trans-.action", and again expressing regret that "you were unable to consummate the transaction."

Meanwhile, back on February 1, 1971, the Bank's attorney went to Franklin and had the sheriff execute a deed conveying subject property to the Bank. Subsequently, the Bank leased the subject property on some sort of mineral lease to a third party and was paid $5000.00 for bonus and lease payments. The Bank claims to have given Allen a release of the judgment. The Bank's president testified that the subject property is "an asset we want to keep", but denied that its value was the reason the Bank changed its mind and decided to keep the property rather than consummate the loan as agreed upon at the day of the sheriff's sale. There is evidence that after the sheriff's sale there was an upsurge of interest in the area including subject property concerning gas production. The Bank's attorney offered in evidence a copy of a letter dated January 26, 1971, addressed to Brannon's attorney, which letter recites that the writer (Bank's attorney) was going to Franklin the following Monday, by which time he wanted the note back in his hands, signed by Mrs. Brannon, so the deed could be made to her; or if the note was not returned by said time (to the Bank's attorney), that the sheriff's deed would be made conveying subject property to the Bank. However, Brannon's attorney denies ever having received this letter, or having any foreknowledge that the Bank was going to get a conveyance from the sheriff.

It was not until the following May (1971) that the Brannons found out by way of further inquiry by letter that the sheriff's deed had been made to the Bank.

On February 23, 1972, Brannon sued the Bank and the Sheriff of Robertson County, and in his First Amended Original Petition alleged facts along the lines hereinabove set out, charging the Bank with fraud in first agreeing to take a note for the consideration at the sheriff's sale (thereby depriving Plaintiff of his right to pay cash) and then later refusing to accept the note and causing the sheriff to convey the property to the Bank, and prayed for a cancellation of the Sheriff's deed to the Bank, for a mandatory injunction to compel the Sheriff to make a deed to Plaintiff Brannon, and in the alternative for $100,000.00 damages. Brannon deposited $5500.00 into the registry of the court to pay for the subject property.

After a nonjury trial on the merits, the trial court entered judgment setting aside and cancelling the sheriff's deed to the Bank, returned Brannon's $5500.00 deposit to him and denied all other relief.

Defendant-Appellant Bank comes to this court on one point of error as follows:

"The court erred in entering judgment setting aside the deed to the Bank because plaintiff (Brannon) sued for specific performance and in the alternative, damages, and the court was not authorized to grant on its own motion relief not sought in the pleadings or prayer."

We overrule Appellant's contention and affirm the trial court's judgment.

The Plaintiff-Appellee in his First Amended Original Petition alleged in detail his version of the facts leading up to this litigation, and then in paragraph VI alleges:

"Plaintiff would show the court that there was in truth and in fact no alternative bid on the property and that, even if there is found to be an alternative bid that there is no authority for the Defendant Sheriff to have accepted the directions of the Defendant Bank's attorney to execute a deed to the Bank on February 1, 1971,

*and that said Sheriff's Deed should be set aside and held for naught,* and that the Sheriff should be ordered to execute a deed to the Plaintiff to said property." (emphasis supplied).

Then in the prayer Plaintiff again specifically prays among other things that on final hearing this sheriff's deed to the Bank "be set aside and held for naught."

■ The Defendant Bank in its pleadings did not in any manner level any special exception to the sufficiency nor to any other aspect of Plaintiff's pleadings. Our Supreme Court in Scott v. Gardner, 137 Tex. 628, 156 S.W.2d 513, 141 A.L.R. 50, specifically held: "In the absence of special exception the petition will be liberally construed in the pleader's favor and to support the judgment." Points 1 and 2, 156 S.W.2d at page 515. The judgment will be upheld if the pleadings may reasonably be construed to afford support for it. See 33 Tex.Jur.2d, "Judgments", par. 68, page 572, and cases cited thereunder.

Rule 1, Texas Rules of Civil Procedure, provides that the rules shall be given a liberal construction. Rule 90, TRCP, provides that every defect, omission, or fault in a pleading which is not specifically pointed out by motion or exception in writing and brought to the attention of the trial court before rendition of a judgment in a nonjury case shall be deemed as waived by the party seeking reversal on such account. Rule 91, TRCP, provides that a special exception shall point out intelligibly and with particularity the defect, omission, obscurity, duplicity, generality, or other insufficiency of the allegations in the pleadings. *Such deficiency may not be raised for the first time on appeal.* See Tolson v. Carroll, Tex.Civ.App. (1958), 313 S.W.2d 131, no writ history, and the cases cited in syllabus 2 thereof.

■ In the case at bar, we believe Plaintiff-Appellee's pleadings to be sufficient to support the trial court's judgment; however, in any event Defendant-Appellant

has waived any insufficiency therein because of its failure to specially except to such pleadings.

Judgment of the trial court is accordingly affirmed.

Affirmed.