**HOLLY SUGAR COMPANY OF HEREFORD, Appellant,**

v.

**Pablo AGUIRRE, Appellee.**

**No. 8304.**

Court of Civil Appeals of Texas, Amarillo.

Nov. 6, 1972.

Rehearings Denied Dec. 4, 1972.

Gibson, Ochsner, Adkins, Harlan & Hankins, James H. Doores, Amarillo, for appellant.

Edwards, Smith & Associates, Carson Smith, Amarillo, for appellee.

REYNOLDS, Justice.

A jury-verdict judgment awarded a business invitee damages for personal injuries suffered on the premises of, and negligently caused by, an occupier defendant. Appeal from this judgment has been taken on the grounds of legal and factual insufficiency of the evidence, and the failure of the trial court to submit an affirmative defense. Reversed and remanded.

The parties are referred to by their trial court designations. Plaintiff Pablo Aguirre was a truck driver engaged in hauling sugar beets from the fields to the plant of defendant Holly Sugar Company of Hereford. Following the normal procedure, plaintiff drove into defendant's premises and up the inclined on ramp and stopped on the level portion of the ramp of a beet piler. A piler is a large semi-stationary complex of machinery and equipment utilized to receive, unload and pile sugar beets to await processing. Plaintiff left the truck motor running in the evidentially revealed custom of all the truck drivers delivering beets, placed the gear in neutral position and, so plaintiff testified, set the emergency brake which was in good operating condition. A hook on a hydraulic lift, a part of the piler complex, was attached to a ring on the right side of the truck bed by one of defendant's employees. Another employee of defendant operated the hydraulic lift to elevate the right side of the bed, causing the load of beets to be dumped through a drop-gate on the left side of the bed into a receiving hopper and onto a conveyor belt.[1] A sam-

---

1. In the normal operation, the conveyor belt moves up and away from the hopper, depositing the beets in piles outside the part of the plant where the beets are processed. When the truck load is dumped into the hopper, the hydraulic lift is operated to lower the truck bed back to its normal position, the hook is detached, and the truck driver proceeds down the inclined off ramp, and drives away from the piler.

ple of the beets, taken for laboratory testing, was being gathered in a sack by another one of defendant's employees called a sampler. Defendant also employed a fourth workman, who was present, for general work around the piler. Plaintiff and the four employees were the only persons present when plaintiff sustained his injuries, and all gave testimony at the trial.

During the dumping process, all or part of the drop-gate on plaintiff's truck broke or came loose and fell into the hopper. After the load of beets was dumped, the truck bed was lowered to its normal position. Plaintiff got out of the truck to retrieve the drop-gate. Plaintiff's testimony is that, while he was standing between the truck and the hopper trying to get the drop-gate out of the hopper, the truck began shaking and vibrating from side to side due to the operation of the motors and belts of the piler and the hydraulic lift hook that was still attached to the truck bed. The testimony of the employees of defendant was that the hook was detached, and they further testified, and the jury found, that the truck began to roll forward. All of defendant's employees, except the sampler who was not then aware of the happening, tried to hold the truck with their hands. The sampler then looked at plaintiff, who motioned to the sampler, and when the sampler approached his position, plaintiff asked him to stop the truck. Plaintiff also said that he told the sampler not to put the truck in gear, but the sampler testified that he did not hear these words. A great deal of noise was generated by the piler. The sampler ran around the front of the truck cab to the right hand door. Plaintiff recalled that the sampler crawled through the door's window space, but the sampler said he opened the door. In any event, the sampler leaned across the seat in a prone position and put his hand on the foot brake pedal. He did not notice the emergency brake. It is agreed that, at that moment, someone yelled to put the truck in gear, but each witness denied having made the statement. The sampler testified that he did not know, and could not tell because of the noise, that the truck motor was running. He engaged the gear and the truck lurched forward or sideways, catching the plaintiff between the truck bed and the hopper with the resultant injuries to plaintiff. None of defendant's four employees was looking at the plaintiff at the time the accident happened.

Upon submission of special issues on two pleaded grounds of recovery, the jury answered that the defendant's sampler was not negligent in putting the truck in gear, but that defendant, "by and through its agents, servants, or employees, failed to keep a proper lookout for the plaintiff on the occasion in question," and that such failure was negligence, which "was a proximate cause of the occurrence in question." The jury fixed plaintiff's monetary damages at $17,500.00. In response to the defensive matters pleaded and submitted, the jury found that the conditions and hazards were not open and obvious to plaintiff; that he failed to move from danger, but such was not negligence; that plaintiff did not fail to have a functioning emergency brake; that the truck was not partially down on the off ramp; and that plaintiff was not negligent in failing to "kill" the engine and put the vehicle in gear before getting out of the truck. The defendant requested submission of its tendered cluster of special issues, in substantially correct form, inquiring whether as defendant had pleaded, the plaintiff failed to set his emergency brake before getting out of the truck cab, and, conditioned on a finding of such failure, the further inquiries of negligence and proximate cause. The court denied the request and refused to include the issues in the charge. The defendant properly preserved his objections and exceptions to the court's action.

Defendant's first nine points of error challenge the proper lookout, negligence and proximate cause special issues on which its liability is predicated. The grounds offered are those of no evidence

to support the submission of, or the jury's answers to, the special issues, and that the jury's answers thereto are against the great weight and preponderance of the evidence. Thus, only the evidence and the permissible inferences most favorable to the submission of the issues and the jury's answers thereto must be considered first to determine if there is any evidence of probative force in support thereof, and, if so, then all of the evidence must be considered to determine if the verdict is so against the great weight and preponderance of the evidence as to be clearly wrong. University of Texas: Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 Texas L.Rev. 361 (1960).

It is defendant's position that it was plaintiff's truck, over which plaintiff exercised sole control and for which defendant had no responsibility, that caused plaintiff's injuries. It follows, therefore, defendant argues, that as a matter of law its employees were under no duty to keep a lookout for plaintiff as an invitee, that no lookout duty was breached, and that any failure to keep a lookout was not a proximate cause of plaintiff's injuries. This is so, defendant says, because no character of lookout would have prevented the injuries as incurred under the circumstances. We disagree.

■ Defendant, as owner of the premises, owed plaintiff, as a business invitee, the duty of exercising reasonable or ordinary care for plaintiff's safety while on the premises. Crum v. Stasney, 404 S. W.2d 72 (Tex.Civ.App.—Eastland 1966, no writ), and not to negligently injure plaintiff. Christian v. Dishongh, 449 S.W.2d 823 (Tex.Civ.App.—Houston [14th Dist.] 1969, no writ). The general duty of ordinary care imposed on an occupier of the premises embraces the specific duty to keep a proper lookout, and is a continuing duty so long as a business invitee remains upon the premises in that role. What constitutes a proper lookout varies with, and must be considered in the light of, the dan-

ger and all surrounding circumstances. Generally, the determination of whether the conduct inquired about meets the requirements of ordinary care is for the jury. See Texas & Pac. Ry. Co. v. Day, 145 Tex. 277, 197 S.W.2d 332 (1946). Since the standards of ordinary care vary with the facts of each case, they cannot be fixed arbitrarily with any degree of certainty, and must be left to the trier of the facts to determine the ultimate facts by both direct and circumstantial evidence. Lynch v. Ricketts, 158 Tex. 487, 314 S.W. 2d 273 (1958).

■ Although none of the witnesses admitted giving the instruction to engage the gears, it is not disputed that someone said it. The jury, as the judge of the credibility of the witnesses and the weight to be given their testimony, was entitled to believe plaintiff's statement that he told the sampler not to engage the gears, and to conclude that one of defendant's employees gave the contrary command. At that time, none of defendant's employees was watching plaintiff, but the jury was entitled to draw the inference that the one who instructed that the truck be put in gear could have seen plaintiff and noticed his position if he had looked; and, therefore, if the truck's motion was stopped by the sampler's hand pressure on the foot brake, he who gave the command to engage the gears should have known that such would subject plaintiff to danger, particularly since the normal custom was for the truck motor to be running. From this testimony, plaintiff's position at the time and the reasonable inferences permitted to be elicited therefrom, the jury was authorized to conclude, as it did, that defendant's agents, servants or employees were not keeping a proper lookout for plaintiff and, under all the circumstances, that the failure to do so was negligence proximately causing plaintiff's injuries.

■ Viewing the evidence as we are required to do, we find there is some evidence of probative force to support the

submission of the issues complained of and the jury's answers in response thereto, and that the evidence as a whole does not reveal the jury's answers to the issues to be so against the great weight and preponderance of the evidence as to be clearly wrong. The fact that the jury might have arrived at other inferences and conclusions does not justify the setting aside of the jury's determination of those facts it concluded to be the most reasonable. Benoit v. Wilson, 150 Tex. 273, 239 S.W.2d 792 (1951). Defendant's first nine points of error are overruled.

The tenth and final point of error is that the court erred in refusing the request for submission of, and failing to submit, the cluster of tendered special issues covering plaintiff's alleged failure to set the emergency brake. In addition to other defensive matters, defendant separately pleaded that plaintiff failed to set the emergency brake before leaving the truck cab. It alleged that such failure was negligence on the part of plaintiff and a proximate cause of his injuries. Concerning this defense, plaintiff's testimony, in addition to his stating that his truck was equipped with an emergency brake that was in good order and was tested each day including the day of his injuries, was that he set the emergency brake before leaving the truck cab. All of defendant's employees testified, and the jury concluded, that the truck rolled forward before it was placed in gear. The sampler who entered the truck cab to apply the foot brake said that he did not notice the emergency brake.

■ Plaintiff contends that the issue of whether the emergency brake was set was properly refused because plaintiff's uncontroverted testimony established that the brake was set, and the court properly exercised its discretion not to submit an established fact. We do not agree. The truck rolled forward from some cause. The jury, had it been permitted to pass on the question, might have determined the truck rolled forward because plaintiff failed to set the emergency brake, the jury having found the truck had a functioning emergency brake. The rejected defense was pleaded as an independent reason why plaintiff should not recover upon the case he stated and proved to the jury's satisfaction. The plaintiff's testimony that he set the emergency brake before leaving the truck cab did not establish the fact as a matter of law. The testimony of a party to a suit involves the credibility of an interested witness and, although his testimony is undisputed, only raises an issue of fact to be resolved by the jury. Scott v. Gardner, 137 Tex. 628, 156 S.W.2d 513 (1941).

■ The discretion of the court was not involved. The defense of the failure to set the emergency brake was neither a shade nor a different form of the submitted defense of failure to have a functioning emergency brake; rather, the rejected defense constituted a separate ground of defense, and defendant was entitled to a separate and distinct submission of the defense under the Texas Rules of Civil Procedure, particularly under Rules 277[2] and 279.[3] The fact that the evidence bearing on the refused issues was also pertinent to the submitted defense of plaintiff's failure to have a functioning emergency brake does not defeat defendant's right of sub-

2. Rule 277 provides, inter alia, "In all jury cases the court . . ., upon request of either party, shall submit the cause upon special issues raised by the written pleadings and the evidence in the case, . . . . Such special issues shall be submitted distinctly and separately . . . ."

3. Rule 279 reads, in part, "When the court submits a case upon special issues, he shall submit the controlling issues made by the written pleadings and the evidence, . . . . Failure to submit an issue shall not be deemed a ground for reversal of the judgment, unless its submission, in substantially correct wording, has been requested in writing and tendered by the party complaining of the judgment; . . . ."

mission of the other defensive matter. The pleaded defense was an affirmative defense and, supported by the pleadings and proof, entitled the defendant to special issues embodying the defense. It was reversible error for the trial court to refuse the request for submission of the affirmative defensive issues properly pleaded, supported by the evidence, and timely tendered in substantially correct wording for submission. Rule 279, T.R.C.P. The tenth point of error is sustained.

The judgment of the trial court is reversed, and the cause is remanded.